UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____
In re:

    PATRICIA MORSE,                                    Chapter 7
                                                            Case No. 17-61271
                                       Debtor.
_____
ESTATE OF ALBERTA M. ROSSI, by and through          Adv. Pro. No. 18-80001
Robert Rossi, Executor,

                                       Plaintiff,

v.

PATRICIA MORSE,

                                       Defendant.
_____

APPEARANCES:

Lynn E'Elia Temes & Stanczyk                             *David C. Temes, Esq.*
*Attorneys for Plaintiff*
100 Madison Street
Tower I – Suite 1905
Syracuse, New York 13202

*David G. Goldbas, Esq.*
*Attorney for Debtor-Defendant*
Adirondack Bank Building
185 Genesee Street, Suite 905
Utica, New York 13501

Honorable Diane Davis, United States Bankruptcy Judge

**MEMORANDUM-DECISION AND ORDER**

*I. Introduction*

        Patricia A. Morse ("Debtor") filed a chapter 7 bankruptcy petition on October 4, 2017. On

January 8, 2018, Robert F. Rossi, as Executor of the Estate of Alberta M. Rossi ("Plaintiff"),

initiated this adversary proceeding by filing a complaint against Debtor seeking to except

Plaintiff's debt from Debtor's discharge under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6) (the "Complaint," ECF Adv. No. 1).[1] On February 2, 2018, Debtor filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)") (the "Motion," ECF Adv. No. 5). Plaintiff filed an objection to the Motion on March 1, 2018 (the "Objection," ECF Adv. No. 9), and Debtor filed a reply on March 6, 2018 (the "Reply," ECF Adv. No. 10). The Court heard oral argument on the Motion on March 8, 2018, and took the matter under advisement. For the reasons stated below, the Motion is granted in part and denied in part.

*II. Jurisdiction*

The Court has jurisdiction over this adversary proceeding and the Motion under 28 U.S.C. §§ 1334(a) and (b) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) in which the Court may enter a final order and judgment pursuant to 28 U.S.C. § 157(b)(1). This Memorandum-Decision and Order constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

*III. State Court Action*

In 2012, Debtor's now deceased mother, Alberta M. Rossi ("Rossi"), commenced an action against Debtor in the New York State Supreme Court, County of Oneida, titled *Alberta M. Rossi v. Patricia A. Morse*, for the imposition of a constructive trust, which was assigned Civil Index Number CA2012-002228 (the "State Court Action"). The State Court Action was premised on events occurring over the course of nearly a decade. Beginning in 2003, Rossi began regularly transferring the ownership of certain financial accounts that were in her sole name to joint accounts in the name of herself and Debtor. From there, Debtor transferred monies to accounts solely in her name. Over time, some of the funds that originated from Rossi were co-mingled with Debtor's

---

[1] Unless otherwise indicated, all further section references are to Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").

own funds. At some point thereafter, the parties' relationship deteriorated and Rossi sued Debtor to recover monies that she claimed she entrusted to Debtor for her to use in connection with Rossi's care, benefit, and enjoyment.

On May 5, 2014, following a bench trial, the Honorable Patrick F. MacRae, Justice of the Supreme Court, issued a lengthy decision rejecting Debtor's defense that Rossi transferred the funds in question to Debtor as a gift, and dismissing Debtor's counterclaims (the "State Court Decision," Mot., Ex. 3.) Judge MacRae determined that, based on the record as a whole, Rossi's sole cause of action was founded on a theory of constructive trust. Under New York law, the requisite elements for the imposition of a constructive trust are: (1) a confidential or fiduciary relationship; (2) a promise; (3) a transfer in reliance thereon; and (4) unjust enrichment. (State Court Decision at 4 (citing *Sharp v. Kosmalski*, 40 NY2d 119, 121 (1976)). As to the first element, because Rossi and Debtor were mother and daughter, Judge MacRae found that a confidential relationship existed between the parties. With respect to certain transfers, Judge MacRae found that Debtor's "conduct demonstrate[d] that she knew the money was not hers and that she diverted it to her own account without the consent or permission of [Rossi]" and that she "knew that she did not have the ownership of the funds that title to the account[s] indicated, so she acted deceptively to avoid alerting [Rossi]." (State Court Decision at 15–16.) Upon examination of multiple transactions between the parties, Judge MacRae found that Debtor "implicitly promised to hold that money in trust for [Rossi]" and Rossi transferred the funds to Debtor in reliance on that promise. (State Court Decision at 17.) Finally, Judge McRae found that Debtor would be unjustly enriched unless she was denied access to monies in a comingled account that rightfully belonged to Rossi. (*Id.*)

On April 27, 2016, following the appointment of an expert to conduct a forensic accounting of the financial evidence adduced at trial and to render an advisory report to the state court, Judge MacRae issued an order adjudicating damages to Plaintiff, as the substituted plaintiff in the State Court Action following Rossi's death, in the amount of $404,634.52 and directing the immediate release of certain funds to Rossi (the "State Court Damages Order," Comp., Ex. B). Debtor appealed, and the New York State Appellate Division for the Fourth Department affirmed both the State Court Decision and the State Court Damages Order by Memorandum and Order issued September 29, 2017. (Obj., Ex. 1.)

*IV. Adversary Proceeding*

The Complaint asserts three counts and alleges in relevant part as follows. Count One of the Complaint alleges that Debtor was a trustee and therefore a fiduciary of the constructive trust established by the State Court Decision.  It further alleges that Debtor knew the funds held in trust were not hers and she diverted them to her own personal financial and investment accounts without the consent or permission of Rossi. Because Debtor misappropriated trust funds by diverting the same to her personal accounts, she committed fraud or defalcation while acting in a fiduciary capacity, such that her debt to Plaintiff should be deemed nondischargeable pursuant to § 523(a)(4). Count Two of the Complaint alleges that, on the same facts, Debtor willfully and maliciously converted the trust funds to her own use, such that her debt to Plaintiff should be deemed nondischargeable pursuant to § 523(a)(2). Count Three of the Complaint alleges that, also on the same facts, Debtor willfully and maliciously converted the trust funds to her own use, such that her debt to Plaintiff should be deemed nondischargeable pursuant to § 523(a)(6).

*V. Arguments*

Procedurally, Debtor argues that the *Rooker-Feldman* doctrine prevents this Court from acting in an appellate capacity to modify or set aside the State Court Decision. Debtor also contends that Plaintiff is now bound by the findings and decisions rendered by Judge McRae. According to Debtor, none of her conduct, as examined and ruled upon within the context of the State Court Action, supports the nondischargeability relief that Plaintiff seeks here under § 523(a).

As to the merits of Count One, Debtor argues that Plaintiff cannot sustain a claim against her for fraud or defalcation while acting in a fiduciary capacity under § 523(a)(4) because Debtor's relationship with Rossi was a confidential relationship. As such, Debtor was not a "fiduciary" for purposes of this subsection. In her Reply, Debtor also argues that Plaintiff cannot sustain a claim against her for embezzlement or larceny under this subsection, because she never tricked or deceived Rossi into transferring the funds to her. Notwithstanding the State Court Decision, Debtor continues to assert that she believed Rossi gifted the funds to her. As to the merits of Count Two, Debtor contends that Plaintiff cannot sustain a claim against her for money obtained by false pretenses, false representation, or actual fraud under § 523(a)(2)(A) because Debtor is not guilty of moral turpitude or intentional wrongdoing. Finally, as to the merits of Count Three, Debtor asserts that Plaintiff cannot sustain a claim against her for willful and malicious injury under § 523(a)(6) because she did not act willfully or maliciously, namely, Debtor argues that she did not act with the specific intent of depriving Rossi of the funds needed for her care and well-being and she did not act without just cause or excuse because she believed the funds were gifted to her.

Conversely, as determined by Judge McRae and affirmed on appeal at the state court level, Plaintiff argues that Debtor undertook acts to deceive Rossi in order to transfer funds to her own accounts. According to Plaintiff, Judge McRae's findings and conclusions are relevant to this

nondischargeability proceeding, and Debtor's conduct is the type of conduct that violates the principals and express cited provisions of § 523(a). Moreover, Plaintiff contends that Debtor's pre- and post-bankruptcy conduct, i.e., her continued failure to comply with Judge McRae's directives to place certain funds in a joint account with Rossi and, ultimately, to account for the funds taken and turn over the same to Plaintiff, independently supports a determination of nondischargeability on the theories advanced by Plaintiff in this proceeding.

As to the merits of Count One, Plaintiff asserts that Debtor promised to hold Rossi's financial assets for her benefit and to use them only for that purpose, which qualifies Debtor as a fiduciary for purposes of § 523(a)(4), regardless of whether there was a written or express trust agreement. Further, as raised by Plaintiff for the first time in response to the Motion, even if Debtor could establish that she did not owe Rossi or Plaintiff a fiduciary duty, Plaintiff contends that it could recover against Debtor under the alternate theories of larceny or embezzlement. According to Plaintiff, Debtor wrongfully took funds from Rossi when she misrepresented to Rossi that she would deposit certain funds in Rossi's account but instead signed Rossi's name to checks and deposited them in her own account, amounting to larceny. Further, as to funds Rossi rightfully entrusted to Debtor, Plaintiff asserts that Debtor then embezzled the funds through the use of deceptive and fraudulent signatures on checks and undisclosed changes to account authorizations. As to the merits of Count Two, Plaintiff contends that it can maintain a claim against Debtor on grounds of false pretenses and false representation. Finally, as to Count Three, Plaintiff asserts that it can maintain a claim against Debtor because she willfully and maliciously converted Rossi's funds in the first instance and she has continued to do the same in violation of Judge MacRae's directives to turn over the funds to Plaintiff and to re-register certain investment accounts in Plaintiff's name.

*VI. Discussion*

    A. *Rule 12 Dismissal Standard*

Debtor bases the Motion on Rule 12(c), as incorporated by Federal Rule of Bankruptcy Procedure 7012(b).[2] The Court's inquiry under Rule 12(b)(6) is "necessarily a limited one" to determine the legal sufficiency of the complaint and not to evaluate the factual basis for the claim. *Scheuer v. Rhodes*, 416 U.S. 232 (1974). Under the flexible plausible pleading standard espoused by the United States Supreme Court, to survive a motion to dismiss, a complaint must contain sufficient factual matter, which, when accepted as true, adequately "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In other words, although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Thus, dismissal is appropriate where the well-pleaded facts permit the court to infer only a mere possibility of misconduct. *Id.* at 557. "In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon with the complaint heavily relies." *Geron v. Seyfarth Shaw LLP*

---

[2] Although Debtor cites Rule 12(c) as a basis for the Motion, which provides that a party may move for judgment on the pleadings, Debtor has not yet filed an answer in this adversary proceeding. As such, a Rule 12(c) motion is not ripe for determination. However, because an answer has not yet been filed, the Court will treat the Motion as one under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") and analyze the motion under that standard. *See Nealy v. Berger*, No. 08-CV-1322 (JFB) (AKT), 2009 U.S. Dist. LEXIS 20939, at *8–9 n.4 (E.D.N.Y. Mar. 16, 2009). In any event, the Court applies the same standard whether reviewing a Rule 12(c) or a Rule 12(b)(6) motion. *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) (citing *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999)).

*(In re Thelen LLP)*, 736 F.3d 213, 219 (2d Cir. 2013) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2008)).

    B. *Effect of the State Court Action*

Preliminarily, the Court rejects Debtor's argument that the *Rooker-Feldman* doctrine deprives it of subject matter jurisdiction to consider this adversary proceeding. The *Rooker-Feldman* doctrine bars "'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Moise v. Ocwen Loan Servicing LLC (In re Moise)*, 575 B.R. 191, (Bankr. E.D.N.Y. 2017) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 514 U.S. 280, 284 (2005)). "[T]he application of the *Rooker-Feldman* doctrine is extremely limited, . . . particularly in the bankruptcy context." *DiGeronimo v. Weissberg (In re DiGeronimo)*, 354 B.R. 625, 640 (Bankr. E.D.N.Y. 2006). In order for it to apply, a four part test must be satisfied: "(1) the federal-court plaintiff lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite [federal] court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the [federal] court proceedings commenced." *In re Moise*, 575 B.R. at 200–201 (quoting *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (internal quotation marks and citation omitted)).

Here, Debtor is not requesting that this Court review and set aside the State Court Decision, or seeking in any way to challenge the results of the State Court Action. Rather, and without specifically asserting that Plaintiff's claims or contentions are barred by the doctrines of res judicata or collateral estoppel, Debtor argues that the State Court Decision somehow binds this Court or impacts this proceeding. This argument squarely raises the affirmative defenses of claim

and issue preclusion.[3] Both doctrines may be analyzed in conjunction with a motion to dismiss under Rule 12(b)(6) as a failure to state a claim upon which relief may be granted. *Randall v. Bank One Nat'l Ass'n (In re Randall)*, 358 B.R. 145, 162–63 (Bankr. E.D. Pa. 2006).

"[W]hile *res judicata* is applicable in establishing the existence of the debt the Court should not look to *res judicata* as the basis to determine a cause of action which arises exclusively under the Bankruptcy Code such as an action pursuant to Section 523(a)." *Indo-Med Commodities, Inc. v. Wisell (In re Wisell)*, 494 B.R. 23, 29 (Bankr. E.D.N.Y. 2011); *accord, Eurocrafters, Ltd. v. Vicedomine*, No. 1:04-CV-855 (GLS), 2005 U.S. Dist. LEXIS 10079, at *9 n.3 (N.D.N.Y. May 18, 2005), *aff'd, Eurocrafters, LTD. v. Vicedomine (In re: Eurocrafters, LTD.)*, 2006 U.S. App. LEXIS 13244 (2d Cir. May 25, 2006). It is well-settled, however, that the doctrine of issue preclusion applies to bankruptcy dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284 (1991). Further, the law is clear that a bankruptcy court may consider the doctrine of preclusion sua sponte. *See, e.g., O'Connor v. Pierson*, 568 F.3d 64, 68 n.2 (2d Cir. 2009) ("[A] court has authority to invoke the doctrine of res judicata on its own invitation, even when the defense has been waived."); *Indu Craft, Inc. v. Bank of Baroda (In re Indu Craft, Inc.)*, 11 Civ. 5996 (JMF), Case No. 97 B 44958 (RDD), 2012 U.S. Dist. LEXIS 105219, at *33 n.6 (S.D.N.Y. July 27, 2012), *aff'd, Trendi Sportswear, Inc. v. Bank of Baroda (In re Indu Craft Inc.)*, 580 Fed. Appx. 33 (2d Cir. 2014); *see also Maxwell v. OneWest Bank (In re Maxwell)*, Case No. 12-31917DM, Adv. Pro. No. 12-3127DM, 2012 Bankr. LEXIS 5476, at *11 (Bankr. N.D. Ca. Nov. 27, 2012) ("[C]laim or issue preclusion are affirmative defenses that must be pled, not raised sua sponte. An exception

---

[3] When questioned during oral argument about the applicability of the preclusion doctrines versus the *Rooker-Feldman* doctrine, Debtor's counsel unequivocally stated that Debtor's defense fell under the latter doctrine. "The *Rooker-Feldman* doctrine is distinct from collateral estoppel and res judicata; however, the *Rooker-Feldman* doctrine and preclusion rules produce a similar outcome: the plaintiff is barred from bringing the case in federal court." *Rey v. Laureda (In re Rey)*, 324 B.R. 449, 453 (Bankr. E.D.N.Y. 2005), *aff'd, Rey v. Laureda (In re Rey)*, 2006 U.S. Dist. LEXIS 32196 (E.D.N.Y. May 22, 2006).

exists, however, 'where all of the relevant facts are contained in the record [] and all are uncontroverted.'") (quoting *Am. Furniture Co. v. Int'l Accommodations Supply*, 721 F.2d 478, 482 (5th Cir. 1981)).

As set forth below, certain relevant facts here are uncontested and the Court may not ignore their legal effect or decline to consider the application of controlling rules of law to dispositive facts, simply because the right argument has not been made. While neither party specifically raised collateral estoppel either in support or defense of the Motion, both rely upon the State Court Decision and Judge MacRae's findings to support their respective positions. Moreover, at oral argument, after reframing Debtor's arguments in both her Motion and Reply, the Court gave the parties an opportunity to address the application of preclusion principles such that neither party can claim surprise or prejudice should the Court apply the same to these facts.

The Court's sua sponte consideration is necessarily limited to collateral estoppel. The purpose of the doctrine of collateral estoppel is to prevent re-litigation in nondischargeability proceedings of issues that were actually decided in another court of competent jurisdiction. *Grogan v. Garner*, 489 U.S. 279. "Under the full faith and credit statute, 28 U.S.C. § 1738, the preclusive effect of state court judgments in subsequent federal actions must be determined by the forum state's law of collateral estoppel . . . ." *Eurocrafters, Ltd. v. Vicedomine*, 2005 U.S. Dist. LEXIS 10079, at *10–11 (citing cases); *Zois v. Cooper (In re Zois)*, 73 Fed. Appx. 509, 510 (2d Cir. 2003) (citing *Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373 (1985); *Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2d Cir. 1987)). Under New York law, collateral estoppel is properly invoked when "(1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans v. Ottimo*, 469 F.3d 278, 281 (2006)

(citing *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455–56 (1985)). As to the first part of the test, "[a]n issue in a dischargeability action is sufficiently 'identical' to an issue in a state proceeding if the elements of the issue in the state proceeding 'closely mirror' the requirements for proof in the bankruptcy action." *In re Duhaime*, Case No. 11-26030-EPK, Adv. Pro. No. 11-02567-EPK, 2012 Bankr. LEXIS 4427, at *11–12 (Bankr. S.D. Fla. Sept. 25, 2012) (citing *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 676 (11th Cir. 1993)).

Given the full evidentiary hearing conducted in the State Court Action, the second element of collateral estoppel under New York law is satisfied. Thus, where applicable, the Court will focus on the first element, namely the identity of the issues already decided in the State Court Action and those to be decided in this dischargeability proceeding, in order to determine whether it is clear from the face of the pleadings that all or part of Plaintiff's Complaint is now precluded and subject to dismissal.

C. *Count One: Bankruptcy Code § 523(a)(4)*

Bankruptcy Code § 523(a)(4) excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). In the Complaint, Plaintiff references only defalcation as a basis for relief under this subsection. (Compl. ¶¶ 25–26.) Plaintiff argues in its Objection that Debtor's mere promise to hold and use Rossi's financial assets for her benefit renders her a fiduciary for purposes of § 523(a)(4). As stated above, Debtor argues that the debt at issue is dischargeable because she is not and never was a fiduciary of Plaintiff or Rossi. In support of the same, Debtor points to Judge MacRae's findings in the State Court Action that led to the imposition of a constructive trust, which Debtor seemingly contends precludes this Court from ruling in favor of Plaintiff on the basis of defalcation under § 523(a)(4).

To prevail on a claim that a debt is nondischargeable under this subsection by reason of defalcation while acting in a fiduciary capacity, a plaintiff must prove three elements: (1) that the debt was incurred in connection with an express or technical trust; (2) that the debtor acted in a fiduciary capacity with respect to that trust; and (3) that the debtor engaged in fraud or a defalcation within the meaning of bankruptcy law. *In re Kakareko*, 575 B.R. 12, 21 (Bankr. E.D.N.Y. 2017) (internal quotation marks and citations omitted). Consistent with the fresh start policy of the Bankruptcy Code and congressional intent to limit the scope of § 523(a)(4), this subsection does not apply to constructive trusts, implied trusts, or trusts implied on the basis of wrongful conduct. *Id.* (citing *Chao v. Duncan (In re Duncan)*, 331 B.R. 70, 77 (Bankr. E.D.N.Y. 2005)). Further, "even where state law imposes a statutory or technical trust, not all such trusts give rise to fiduciary relationships for purposes of [this] discharge exception . . . ." *Reilly v. Miano (In re Miano)*, 265 B.R. 352, 355 (Bankr. D. Conn. 2001) (citing cases). The meaning of the term "fiduciary" is a matter of federal law in this context, and the broad state law definition involving confidence, trust, and good faith is not applicable in dischargeability proceedings under § 523(a)(4). *Id.* at 355. Moreover, "[t]he question of whether a defalcation has occurred is reached only when the threshold determination that the debtor acted in a fiduciary capacity has been made." *The Andy Warhol Foundation for Visual Arts, Inc. v. Hayes*, 183 F.3d 162, 170 (2d Cir. 1999).

In the State Court Action, Judge MacRae specifically considered whether Debtor acted as a fiduciary to Plaintiff and he conclusively determined the nature of the parties' relationship. Under New York law, a constructive trust is an equitable remedy to prevent unjust enrichment. In general, to impose a constructive trust, four elements must be established: (1) a confidential or fiduciary relationship; (2) a promise; (3) a transfer in reliance thereon; and (4) unjust enrichment. *Sharp v. Kosmalski*, 40 N.Y.2d 119, 121 (1976). Thus, the issue of whether Debtor acted as a

fiduciary to Rossi under state law, which is broader than that utilized under federal law for purposes of nondischargeability, was actually litigated and decided by Judge MacRae. Further, this Court cannot ignore the fact that Judge MacRae determined that Plaintiff's debt arose as a result of a constructive trust, whereby equity converted Debtor into a trustee because of her confidential relationship with Rossi, rather than by virtue of an express agreement between Debtor and Rossi. This confidential familial relationship that supported Judge MacRae's imposition of a constructive trust is insufficient to create a fiduciary relationship and bar discharge of the debt under the theory of defalcation. *See, e.g., In re Miano*, 265 B.R. at 355. Moreover, Plaintiff has not pleaded under bankruptcy law or asserted facts that would support the imposition of a statutory or technical trust. Accordingly, the Court finds that Plaintiff's § 523(a)(4) claim for defalcation while acting in a fiduciary capacity is facially implausible and subject to dismissal.

At oral argument, Plaintiff asserted that, even if the Court rules that Debtor is not a fiduciary, Plaintiff can state a claim for larceny or embezzlement. "Larceny and embezzlement, for purposes of § 523(a)(4), are defined by reference to federal common law, under which an element of both is the debtor's actual fraudulent intent in obtaining the property at issue." *Id.* at 356 (citing *Barristers Abstract Corp. v. Caulfield (In re Caulfield)*, 192 B.R. 808, 818 (Bankr. E.D.N.Y. 1996)). In order to except a debt from discharge for larceny, a plaintiff must show that the debtor wrongfully took property from another with the fraudulent intent to convert such property for his or her use without the consent of the owner. *Killian v. Fucci (In re Fucci)*, Case No. 07-32378, 2011 Bankr. LEXIS 1296, at *15 (Bankr. D. Conn. Mar. 31, 2011) (citing *In re Marcou*, 209 B.R. 287, 293 (Bankr. E.D.N.Y. 1997)). In order to except a debt from discharge for embezzlement, a plaintiff must prove three elements: "(1) the debtor rightfully possessed another's property; (2) the debtor appropriated the property for use other than the use for which the property

was entrusted; and (3) the circumstances implied a fraudulent intent." *Northeast Remarketing Servs. v. Guthier (In re Guthier)*, Case No. 08-33020, 2010 Bankr. LEXIS 2128, at *17 (Bankr. N.D.N.Y. Apr. 10, 2010) (citing *In re Kressner*, 155 B.R. 68, 74 (Bankr. S.D.N.Y. 1993)).

In this regard, Plaintiff contends that Judge MacRae's findings minimally permit the Court to infer that Debtor acted with the requisite fraudulent intent for either theory of recovery. Specifically, Debtor made certain misrepresentations to Rossi and signed Rossi's name to checks that Debtor then deposited into her own account. The question of Debtor's intent, however, was not necessary to Judge MacRae's ultimate ruling and imposition of a constructive trust. The issues presented in the State Court Action were far more limited than those raised in the context of a § 523(a)(4) proceeding for larceny or embezzlement. With respect to Plaintiff's newly asserted claim based on the theories of larceny and embezzlement, therefore, the test for collateral estoppel is not satisfied.

Nevertheless, as a basis for its Complaint, Plaintiff has reiterated many of Judge MacRae's findings and utilized the same factual assertions in support of nondischargeability. Notably, before imposing a constructive trust, Judge MacRae determined that there was an agreement and implied promise by Debtor to hold the property for Rossi, which induced Rossi to transfer the funds. (State Court Decision at 8.) The inference to be drawn from the same is that Rossi willingly permitted Debtor to have access to her funds. In fact, as alleged by Plaintiff, Rossi gave Debtor authority over her funds with specific instructions as to where to deposit those funds. Accordingly, Plaintiff's claim for larceny is facially implausible because Plaintiff cannot satisfy the wrongful taking element. The Court finds, however, that Plaintiff's § 523(a)(4) claim based on embezzlement is facially plausible and it will permit Plaintiff to amend its Complaint to replead

this claim in order to allege the specific circumstances that would support an inference of fraudulent intent.[4]

### D. Count Two: Bankruptcy Code § 523(a)(2)(A)

Bankruptcy Code § 523(a)(2)(A) excepts from discharge debts for "money, property, services, . . . to the extent obtained by—false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . ." 11 U.S.C. § 523(a)(2)(A). Plaintiff's § 523(a)(2)(A) claim in this case is premised on the first and second theories, false pretenses and false representation. In order to prevail on a claim for false pretenses, a plaintiff must prove four elements: (1) an implied misrepresentation or conduct by the debtor; (2) promoted knowingly and willingly; (3) to create a contrived and misleading understanding of the transaction on the part of the plaintiff; and (4) which wrongfully induced plaintiff to advance money, property, or credit to the debtor. *Scheidelman v. Henderson (In re Henderson)*, 423 B.R. 598, 621 (Bankr. N.D.N.Y. 2010) (citing *Vidomlanski v. Gabor (In re Gabor)*, Case No. 05-18719 (ALG), Adv. Pro. No. 06-10916 (ALG), 2009 Bankr. LEXIS 3110, at *12 (citing *Lubit v. Chase (In re Chase)*, 372 B.R. 125, 128 (Bankr. S.D.N.Y. 2007)). In order to prevail on a claim for false representation, a plaintiff must prove four elements: (1) debtor made an express false or misleading statement; (2) with the intent to deceive; (3) on which the creditor justifiably relied; and (4) in order to induce the creditor to turn over money or property to the debtor. *Id.* (citing *Weiss v. Alicea (In re Alicea)*, 230 B.R. 492, 500 (Bankr. S.D.N.Y. 1999)).

In support of Count Two of the Complaint, Plaintiff asserts only that Debtor knew that the funds transferred by Rossi were not hers and she diverted them to her own account without Rossi's

---

[4] Since the Motion belongs under Rule 12(b)(6), and the Court has proceeded as such, Plaintiff may amend the Complaint as a matter of course as permitted by subsection (a)(1)(B) of Federal Rule of Civil Procedure 15 ("Rule 15"), made applicable to adversary proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7015. To the extent leave is required, however, the Court grants the same pursuant to subsection Rule 15(a)(2).

consent or permission, and that she willfully and maliciously converted Rossi's funds to her own use. (Compl. ¶¶ 36–37.) As a basis for dismissal, Debtor contends that Plaintiff has not alleged facts to support each element of a claim for either false pretenses or false representation. Specifically, Debtor argues that Plaintiff cannot support a claim for nondischargeability under either theory because Debtor did not obtain the funds through any intentional wrongdoing. Rather, Debtor asserts that Rossi acted on her own and voluntarily transferred funds to Debtor. Debtor emphasizes that Judge MacRae did not find an express representation or omission, but rather found an implied promise by Debtor to abide by Rossi's wishes due to their familial relationship. Debtor emphasizes that she did in fact abide by Rossi's directives for years until their relationship deteriorated, as indicated in the State Court Decision.

Whether Debtor made a promise to Rossi with respect to the use of Rossi's funds does not closely mirror the bankruptcy inquiry of whether Debtor knowingly made misrepresentations or statements. Therefore, the test for collateral estoppel is not met here either. After examining the Complaint and considering the relevant record, including the State Court Decision, however, the Court agrees that Plaintiff has failed to allege that Debtor had the requisite scienter that must be established for relief under § 523(a)(2)(A). In fact, the Complaint only includes allegations that, subsequent to Rossi's transfer of funds, Debtor failed to use those funds for Rossi's benefit or to pay those funds over to Plaintiff. Plaintiff has not alleged that Debtor intended to and in fact did deceive Rossi in order to convince Rossi to give Debtor access to her funds. Accordingly, the Court grants Debtor's Motion as to Count Two of the Complaint.

    E. *Count Three: Bankruptcy Code § 523(a)(6)*

Bankruptcy Code § 523(a)(6) excepts from discharge debts for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

The "willfulness" element requires a plaintiff to prove "a deliberate and intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). The "maliciousness" element requires that a plaintiff further prove that said injury was "wrongful and without just excuse, even in the absence of personal hatred, spite or ill-will." *In re Stelluti*, 94 F.3d 84, 88 (2d Cir. 1996).

Under Count Three of the Complaint, Plaintiff repeats the same factual allegations raised in Count Two of the Complaint. Namely, Plaintiff asserts that Debtor knew the funds were not hers and she diverted them to her own use, and that this constituted a willful and malicious conversion. (Compl. ¶¶ 41–42.) The Court is not required to accept as true the latter allegation because it is a legal conclusion. *Iqbal*, 129 S. Ct. at 1949–50. The Court must accept as true, however, Plaintiff's factual allegations that Debtor appropriated Rossi's funds with the specific intent of depriving Rossi of the funds and converting them to her exclusive use. In Plaintiff's Reply, Plaintiff contends that Debtor intended to cause financial injury to Rossi by depriving Rossi of the funds and that she did so maliciously, which may be implied by Debtor's acts and conduct in the context of the circumstances surrounding the parties' relationship. Although Debtor defends this claim on the basis that the funds were a gift from Rossi aimed at teaching Debtor about investments, Plaintiff emphasizes that Judge MacRae rejected this defense when presented in the State Court Action.

Although Judge MacRae found with respect to certain transactions that Debtor "knew she was not intending to deposit the check as directed by [Rossi]," (State Court Decision at 15), "she knew the money was not hers and . . . she diverted it to her own account without the consent or permission of [Rossi]," (*id.*), and she "knew she did not have the ownership of the funds that title to the account indicated, so she acted deceptively to avoid alerting plaintiff," (*id.* at 16), these

findings are not preclusive to this Court's § 523(a)(6) determination. The state law claim for the imposition of a constructive trust does not share an identity of issues with § 523(a)(6) since it does not require either willfulness, i.e., an intent to injury, or maliciousness. Thus, the test for collateral estoppel is not met here either.

The Court finds that Plaintiff has sufficiently pleaded facts that would allow the Court to reasonably infer that Debtor's acts or conduct caused a willful injury to Plaintiff, by depriving Rossi of $404,634.52 during her lifetime after the parties' mother-daughter relationship deteriorated with the specific intent of depriving Rossi of the monies and converting them to her own exclusive use. This resulted in a loss to Rossi, which is now suffered by Plaintiff. The Court further finds that Plaintiff has pleaded facts that would allow the Court to reasonably infer that the injury caused by Debtor was malicious. Accordingly, the Court denies Debtor's Motion as to Count Three of the Complaint.

*VII. Conclusion*

For the foregoing reasons, the Court grants Debtor's Motion to dismiss Count One of the Complaint to except the debt from discharge on the ground of defalcation under § 523(a)(4), without prejudice to Plaintiff's right to amend Count One of the Complaint to assert a claim for embezzlement under § 523(a)(4). The Court further grants Debtor's Motion to dismiss Court Two of the Complaint to except the debt from discharge on the grounds of false pretenses or false representation under § 523(a)(2)(A). Finally, the Court denies Debtor's Motion to dismiss Count Three of the Complaint on the ground of willful and malicious injury under § 523(a)(6). The Court has considered all arguments made by the parties in their submissions and at oral argument, and to the extent any argument is not specifically addressed herein, it is because the Court has found it to be either meritless or premature at this stage of the litigation in this proceeding.

For the foregoing reasons, it is now,

ORDERED, that the Motion is granted in part and Plaintiff's claim under Count One of the Complaint to except the debt from discharge under a theory of defalcation pursuant to § 523(a)(4) is dismissed; and it is further

ORDERED, that Plaintiff is granted leave, to the extent required, to amend Count One of the Complaint to except the debt from discharge under a theory of embezzlement pursuant to § 523(a)(4); and it is further

ORDERED, that the Motion is granted in part and Plaintiff's claim under Count Two of the Complaint to except the debt from discharge under a theory of false pretenses or false representation pursuant to §523(a)(2)(A) is dismissed; and it is further

ORDERED, that the Motion is denied in part and Plaintiff's claim under Count Three of the Complaint to except the debt from discharge under a theory of willful and malicious injury pursuant to § 523(a)(6) survives.

It is SO ORDERED.

Dated: July 26, 2018
      Utica, New York

                                      /s/Diane Davis_____
                                      DIANE DAVIS
                                      United States Bankruptcy Judge